**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **JIMMIE MCNEIL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **NO. 5:10-CV-95 (CAR)** |
| **VS.** | : | |
| | : | |
| **FREDERICK ROVNER** *et al.,* | : | **Proceedings Under 42 U.S.C. §1983** |
| | : | **Before the U.S. Magistrate Judge** |
| | : | |
| **Defendants.** | : | |

<u>**RECOMMENDATION TO GRANT SUMMARY JUDGMENT**</u>

Before the Court is an unopposed Motion for Summary Judgment filed by Defendants Frederick Rovner and Joan Newman. Doc. 26. For the following reasons, **IT IS RECOMMENDED** that the motion be **GRANTED**.

<u>BACKGROUND</u>

Plaintiff Jimmie McNeil filed the above-captioned 42 U.S.C. §1983 action, alleging that Frederick Rovner and Joan Newman were deliberately indifferent to his serious medical needs during his incarceration at Central State Prison. Rovner is a clinical practitioner employed at Central State, and Newman is or was the medical director at Central State. Plaintiff's Complaint also includes allegations related to his previous incarcerations at Phillips State Prison and Autry State Prison and claims against other defendants, but those claims have been dismissed pursuant to 28 U.S.C. § 1915A. <u>See</u> Docs. 7, 16.

Plaintiff has not responded to Defendants' Motion for Summary Judgment. After the motion was filed, the Court directed Plaintiff to prepare and file a response within thirty days. Doc. 27. Although Plaintiff requested (Doc.28) and was granted (Doc.30) an extension of time to file his response, no response was filed. Consequently, the Court entered an order directing Plaintiff to

show cause for his failure to respond. Doc. 31. In response to the show cause order, Plaintiff stated

that he is unable to respond due to his ignorance of the law and inability to translate Defendants'

"legalese." Plaintiff renewed his request for appointed counsel to assist in prosecution of his claims.

For the reasons set forth in the Court's Order denying Plaintiff's first motion for appointment

of counsel, the facts and circumstances of this case do not merit appointed counsel. In the absence

of a response from Plaintiff, the motion for summary judgment is reviewed on its merits as an

unopposed motion.

## LEGAL STANDARDS

### Summary Judgment

Notwithstanding Plaintiff's failure to submit any substantive response to the Defendants'

motion for summary judgment, it is the responsibility of the Court to ensure that summary judgment

is warranted under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper

if the evidence shows "that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The movant

bears the burden of establishing the absence of a dispute over a material fact. Reynolds v.

Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir.1993). The evidence and factual inferences

from the evidence are viewed favorably to the party opposing summary judgment. Reynolds, 989

F.2d at 469. However, when "a motion for summary judgment is properly made and supported, an

opposing party may not rely merely on allegations or denials in its own pleadings. Rather, the non-

movant's response must, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of

Civil Procedure, set out specific facts showing a genuine issue for trial.

The moving party must meet its burden even if the non-moving party fails to respond to a

motion for summary judgment. Courts "cannot base the entry of summary judgment on the mere

fact that the motion was unopposed, but, rather, must consider the merits of the motion." United

States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099,

1101 (11th Cir. 2004). In considering the merits of an unopposed motion for summary judgment,

a court

> need not sua sponte review all of the evidentiary materials on file at the time the
> motion is granted, but must ensure that the motion itself is supported by evidentiary
> materials. At the least, the district court must review all of the evidentiary materials
> submitted in support of the motion for summary judgment.

Id. at 1101-02. In other words, the court cannot simply accept the facts stated in a moving party's

statement of material facts as true, but must review the movant's citations to the record and confirm

there are no genuine issues of material fact. Id. at 1103 n. 6. Pursuant to Rule 56(c), the court "need

consider only the cited materials, but it may also consider other materials in the record."

DISCUSSION

In this case, the Court has reviewed all of the evidentiary materials on file. These materials

include the complete deposition of the Plaintiff, in which Plaintiff had an opportunity to state his

case and explain the nature of his claims in plain language and without resort to legalese. The

evidentiary materials also include an affidavit from Defendant Rovner, an affidavit from the current

mental health director at Central State Prison, and Plaintiff's medical records from Central State and

from Autry State Prison. For purposes of determining whether the Defendants are entitled to

summary judgment, the Court views the evidence and draws all factual inferences from the evidence

in the light most favorable to the Plaintiff.

**Medical Treatment Claim**

In his Complaint and in his deposition testimony, Plaintiff contends that Rovner failed to

provide adequate attention to his complaints of vision problems and that Newman failed to respond

to a letter and a grievance requesting further treatment. Specifically, Plaintiff contends that he was

3

diagnosed with an "oculogyric crisis" while previously incarcerated at Autry State, and that the medical staff at Central State failed to provide treatment for this condition. The evidence in the record, viewed in the light most favorable to Plaintiff, shows that Plaintiff experienced a single episode of oculogyric crisis while at Autry State and that he received adequate treatment to remedy the condition at that time. There is no evidence that the condition persisted or required further treatment after Plaintiff was transferred to Central State. As such, there are no genuine issues of material fact with regard to this claim, and that Defendants are entitled to judgment as a matter of law.

To establish a genuine issue of material fact for a violation of the Eighth Amendment related to medical treatment, the record must present evidence of acts or omissions sufficiently harmful to constitute "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference has both an objective and a subjective component. Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994) ), overruled in part on other grounds, Hope v. Peltzer, 536 U.S. 730 at 739 (2002), (citing Wilson v. Seiter, 501 U.S. 294 (1991) (subjective component), Whitley v. Albers, 475 U.S. 312 (1986)(subjective component), and Rhodes v. Chapman, 452 U.S. 337 (1981)(objective component). The objective component requires a showing that the prisoner had a serious medical need. Id. See also Hudson v. McMillian, 503 U.S. 1, 9 (1992)); Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). The subjective component requires a showing that a defendant knowingly and intentionally refused to provide treatment for that need. Hill, 40 F.3d at 1186; Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989). See also Farmer v. Brennan, 511 U.S. 825 (1994)(noting that deliberate indifference requires a sufficiently culpable state of mind and can only be satisfied by showing that a prison official knew of and disregarded an excessive risk to inmate health or safety); Cottrell v. Caldwell, 85 F.3d 1480, 1490-91 (11th Cir. 1996).

The evidence shows that Plaintiff experienced, at most, a single episode of oculogyric crisis during his prior incarceration at Autry State. According to Plaintiff, on June 23, 2009, his eyes "locked to the ceiling." McNeil Dep. 25 (Doc. 26-3). Plaintiff testifies that Dr. Johnson, a psychiatrist at Autry State, diagnosed him with "oculogyric crisis," a condition involving a spasmodic movement of the eyeballs and a fixation of the eyeballs into one position. The medical records submitted by Defendants do not include a note from Dr. Johnson or any mention of the term "oculogyric crisis," but the records corroborate Plaintiff's testimony by showing that on June 23 Plaintiff reported to the emergency room, where he was observed to be "unresponsive to name" and to display a "constant gaze to the ceiling." Defs.' Ex. A-1 p. 23 (Doc. 26-4).

Plaintiff testifies that Dr. Johnson determined that the condition was a side effect of Prolixin, an anti-psychotic medication that Plaintiff was taking. Plaintiff's testimony and the medical records show that Dr. Johnson responded by changed his prescription from Prolixin first to Navane and then to Abilify. There is nothing in Plaintiff's deposition testimony or in the medical records to indicate that Plaintiff suffered another incident of oculogyric crisis after Dr. Johnson changed his medication.

The records indicate that both before and after the June 23, 2009 incident, Plaintiff consistently complained about "seeing lines" and having blurry vision. On April 2, 2009, had his eyes examined by a nurse. The nurse determined that Plaintiff had vision within a normal range, with a good range of motion and no nystagmus, but also noted double vision. Plaintiff was referred to an optometrist for further examination. Plaintiff met with the optometrist, Dr. Boyd, on April 23, 2009. Although Dr. Boyd's treatment notes are almost completely illegible to a layman, Rovner in his affidavit interprets them to show that Plaintiff's eyes were functionally normal and that his retinas were normal. Rovner Aff. ¶ 8 (Doc. 26-7). Although Dr. Boyd did not observe any

"floaters" (i.e., spots that may drift through the field of vision) he noted that their presence was likely.

On August 31, 2009, Plaintiff was transferred from Autry State Prison to Central State, where he continued to complain about seeing lines floating in his vision. Though Plaintiff made no complaints about eye problems during his initial medical screening, he reported eye problems to his mental health counselor in both September and October of 2009. On October 28, 2009, in response to a medical request complaining about lines floating across his eyes making him dizzy, Plaintiff was examined by a nurse. Though the examination revealed no apparent problems, Plaintiff was scheduled for an appointment with Defendant Rovner.

Plaintiff first saw Defendant Rovner on November 2, 2009. Following an examination, Rovner noted that Plaintiff's eyes and vision appeared normal, observed no floaters, and determined that the Plaintiff had probable floaters without vision problems. As a result, Plaintiff was instructed to avoid active sports and return to medical if his symptoms persisted, increased, or changed. On January 4, 2010, Plaintiff returned to medical for a follow up visit scheduled by Defendant Rovner. During this visit, Plaintiff reported no change in vision, no headaches, tearing, pain, or itching eyes. Plaintiff's eyes were again examined and found normal. As before, Plaintiff was instructed to return to medical if he experienced any vision problems, headaches, or decreased visual acuity.

Plaintiff next met Defendant Rovner on April 20, 2010, for a routine physical examination. During this examination, Plaintiff denied any medical problems. Moreover, an examination of Plaintiff's visual acuity revealed 20/20 vision. Plaintiff's last contact with Defendant Rovner occurred on August 30, 2010, related to a complaint of athlete's foot. Rovner performed another visual acuity test, again with normal results.

The evidence in this case shows that Plaintiff received thorough attention and treatment for his eye-related medical complaints and other medical concerns during his incarceration both at Autry State and at Central State. The records show that Plaintiff received several eye exams, none of which indicated any significant abnormality. There is no evidence to indicate that Plaintiff experienced any episodes of oculogyric crisis after his anti-psychotic medication was changed in June 2009. Accordingly, even when viewed in the light most favorable to Plaintiff, the evidence is simply not sufficient to demonstrate that either Defendant knowingly and intentionally refused to provide the Plaintiff with necessary medical treatment. As such, no reasonable jury could find that the Defendants exhibited deliberate indifference to any of Plaintiff's medical needs. Consequently, Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The Clerk is directed to serve Plaintiff at the last address provided by him.

**SO RECOMMENDED**, this 6th day of May, 2011.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge